UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAINTERS & ALLIED TRADES )
DISTRICT COUNCIL NO. 35, )
)
Plaintiff, )
) C.A. No. 03-12564 RCL
v. )
)
KMA DRYWALL, INC., )
)
Defendant. )

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I. Introduction

This is an action to enforce a labor arbitration award pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. §185. Plaintiff Painters and Allied Trades District Council No. 35 and Defendant KMA Drywall, Inc., are parties to a collective bargaining agreement that provides for final and binding arbitration of disputes under the agreement before the Painting, Finishing & Glazing D.C. No. 35 Joint Trade Board ("Joint Trade Board").

On October 3, 2003, the Joint Trade Board issued an arbitration award in which it found that the Defendant violated the agreement by failing to make required fringe benefit contributions, and awarded Painters and Allied Trades District Council No. 35 the amount of $25,605.58. Defendant did not file a motion to vacate the arbitration award within the thirty-day statutory period. As there are no genuine issues of material fact in dispute, summary judgment in favor of the Plaintiff is appropriate.

II.     Statement of Undisputed Material Facts

Painters & Allied Trades District Council No. 35 (hereinafter "District Council") is the authorized collective bargaining representative for painters and allied trades employed in Massachusetts, Vermont, Maine, and New Hampshire. (Affidavit of Ralph Harriman ¶ 3). The District Council and the Painters & Finishing Employers Association of New England, Inc. ("Contractors Association"), and the Glass Employers Association of New England, Inc., are parties to a collective bargaining agreement (hereinafter "the agreement") with effective dates of July 1, 2002 to June 30, 2006. (Harriman Aff. ¶ 4; Exh. A). Defendant was bound by the agreement by virtue of its having signed a Memorandum of Understanding for Non-Association Independent Contractors on September 4, 2002. (Harriman Aff. ¶ 5; Exh. B).

Article XIX of the agreement provides for a grievance and arbitration provision for handling disputes that arise under the agreement. (Harriman Aff. ¶ 6, Exh. A). Pursuant to Article XIX, Section 1, the Joint Trade Board is made up of representatives from both the District Council and the Contractors Association, and is authorized, pursuant to Article XIX, Section 5 of the agreement, to hear and adjudicate "all questions of interpretation of this agreement and all grievances and complaints against members of either party to this Agreement, or independent signatory Employer for alleged violations of the same." (Harriman Aff. ¶ 6; Exh. A). Article XIX, Section 11 of the agreement mandates that the Joint Trade Board's decisions are binding on the parties, including any independent signatory, unless appealed in accordance with Article XX of the agreement. (Harriman Aff. ¶¶ 6, 7; Exh. A).

In a letter dated September 10, 2003, the Joint Trade Board notified KMA via certified mail that charges had been brought against the Company for violation of Article IX, Section 3 of the agreement. (Harriman Aff. ¶ 8; Exh. C).

Article IX, Section 3 states:

FAILURE TO PAY

Contributions shall be considered delinquent if not received by the 26th day of the month following the month the work was performed or for weekly submittals, the Wednesday of the week following the week in which the work is performed. Interest charged at the rate of 1 1/2 % per month or prorated for weekly submittals will be assessed for any delinquent contributions which are not paid in violation of this Agreement.

In the event an Employer is delinquent or fails to abide by Article IX, Sections 1,2 and/or 8 said case will be reviewed by the Funds' Trustees and the following delinquency procedure will be enforced

(A) A recommendation by the Trustees to the UNION for removal of its members from said Employer's jobs. If the Employees are withdrawn from the job, the delinquent contractor shall pay full wages and contributions for five (5) working days per member. Payment of fund contributions and the payment of wages for a member(s) pursuant to this Section may be withdrawn from the security deposit. Payment of wages and benefits lost by a steward appointed by the UNION will also be deducted from the security deposit. Deductions from the security deposit must be replaced by an Employer prior to continuation of work. The UNION shall have the power to withhold its members upon the recommendation of the Trustees and shall not be liable for withholding its members upon the recommendation of the Trustees.
(B) A referral of the delinquent Employer by the Trustees to the Joint Trade Board for determination or action.
(C) An invocation of the arbitration procedure or referral of the delinquent Employer by the Trustees or Joint Trade Board to legal Counsel to bring action on behalf of the Plan pursuant to Section 502(g)(2) and 515 of ERISA to enforce the Employer's obligation.
(D) In any action in which a decision or judgment is awarded in favor of the Funds, the Employer shall pay to the Funds, in accordance with the court's award or other decision:
  (i)   The unpaid contributions, plus interest on the unpaid contributions, determined at the rate of 1 1/2 % each month plus.
  (iii)  Liquidated damages equal to the greater of –
      (a) The amount of interest charged on the unpaid contributions, or
      (b) 20 percent (higher percentage, if permitted by Federal or State Law) of the unpaid contributions, plus

  (iv) Reasonable attorney's fees and costs of the action, and
  (v) Such other legal or equitable relief as the court deems appropriate.

(Harriman Aff. ¶ 8; Exh. A).

The Joint Trade Board also informed KMA in the September 10, 2003 letter that it was being summoned to have a representative appear on its behalf before the New England Painting, Finishing & Glazing D.C. No. 35 Joint Trade Board at 9:45 a.m. on Wednesday, September 24, 2003, at the offices of Painters and Allied Trades District Council No. 35, 25 Colgate Road, Roslindale, Massachusetts, to resolve the matter. (Harriman Aff. ¶ 9; Exh. C). Lynn Gardiner, President of KMA, signed for the letter on September 11, 2003 (Harriman Aff. ¶ 9; Exh. C).

On September 24, 2003, a hearing was held before the Joint Trade Board. Lynn Gardiner, President of KMA Drywall, appeared on behalf of the Company. (Harriman Aff. ¶ 10). Sharon Saganey, Fund Administrator for the Funds, presented evidence in support of the charge, explaining that KMA had failed to pay the required fringe benefit contributions for June and July 2003, as well as for August 2003, and that KMA was in arrears for a total of $21,171.32. (Harriman Aff. ¶ 10).

Based upon the evidence presented, the Joint Trade Board held that KMA had breached Article IX, Section 3 of the agreement by failing to make the required contributions for June, July, and August 2003 in the amount of $21,171.32. (Harriman ¶ 11). The Board also held that KMA was required to pay 20% liquidated damages and an administrative fee of $200, for a total award of $25,605.58. (Harriman Aff. ¶ 11).

In a letter dated October 3, 2003, sent via certified mail, the Joint Trade Board notified Lynn Gardiner of KMA that it had heard the charges on September 24, 2003, had ruled in the District Council's favor, and had assessed an award against KMA Drywall in

4

the amount of $25,605.58, payable within ten days following receipt of the award. The Joint Trade Board included a copy of the appeal procedures. (Harriman Aff. ¶ 12; Exh. D). The Joint Trade Board also noted in the award that if KMA failed to comply with the terms of the award, and the Union prevailed in a judicial enforcement action, attorney's fees would be deemed part of the award, along with interest on the attorney fees counting from a date ten days after KMA's receipt of the award. (Harriman Aff. ¶13; Exh. D). Lynn Gardiner signed for receipt of the October 3 letter on October 6, 2003. (Harriman Aff. ¶ 14; Exh. D).

KMA Drywall did not appeal the Joint Trade Board's decision within ten days of receipt of the award, nor did it move to vacate the award in federal district court within thirty days of receipt of the award. (Harriman Aff. ¶ 15). To date, KMA Drywall has not made payment of the award. (Harriman Aff. ¶ 15).

III.   Argument

    A.   Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Rule 56(c) provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Perez De La Cruz v. Crowley Towing and Transportation Co.*, 807 F.2d 1084, 106 (1st Cir. 1986), *cert. denied*, 487 U.S. 1050 (1987).

Material facts are those that have the potential to affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). The existence of a factual dispute will not necessarily defeat a summary judgment motion. "[T]he requirement is that there must be a *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law applicable to a case determines whether a particular factual dispute is material, and the court should assess the evidence to determine the genuineness of the factual dispute. *Id.* No genuine issue for trial exists where the record taken as a whole could not lead a rational trier of facts to find for the nonmoving party. *Matsushita Electric Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

After the moving party meets its burden, the nonmoving party bears the burden of placing at least one material fact into dispute after the movant offers evidence of the absence of a genuine issue. *Darr v. Muratore*, 8 F.3d 854, 859 (1st Cir. 1993). Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. *Medina Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

B. <u>Plaintiff is Entitled to Enforcement Pursuant to the Standard of Review of Arbitration Awards under Section 301 of the Labor Management Relations Act.</u>

Section 301 of the Labor Management Relations Act vests federal district courts with jurisdiction to enforce collective bargaining agreements. 29 U.S.C. §185; *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448 (1957). Section 301 likewise vests courts with jurisdiction to enforce or vacate arbitration awards rendered pursuant to arbitration clauses of collective bargaining agreements. *United Paperworkers Int'l. Union v. Misco, Inc.*, 484 U.S. 364 (1987).

In Section 301 actions, the "judicial review of an arbitration award is among the narrowest known to the law." *Maine Cent. R.R. Co. v. Brotherhood of Maintenance of Way Employees*, 873 F.2d 425, 428 (1st Cir. 1989). Any review is "extremely narrow and extraordinarily deferential." *Service Employees Int'l Union v. Local 1199, N.E.*, 70 F.3d 647, 651 (1st Cir. 1995). Courts "shall uphold an arbitrator's interpretation of a contract so long as we can find *some plausible argument* that favors his interpretation." *Crafts Precision Ind., Inc. v. Lodge No. 1836, Int'l Ass'n of Machinists*, 889 F.2d 1184 (1st Cir. 1989) (Emphasis added). Even in summary judgment cases, this highly deferential standard governs judicial review of arbitration awards. *El Dorado Technical Serv., Inc. v. Union General de Trabajadores de Puerto Rico*, 961 F.2d 317, 319 (1st Cir. 1992) (affirming enforcement of arbitration award on summary judgment).

This exceptionally limited judicial review of arbitration awards is based on fundamental principles of federal labor law and policy. In the "Steelworkers Trilogy,"[1] the

---

[1] *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S 592 (1960).

7

Supreme Court established definitive standards for the enforcement of labor arbitration agreements and awards under Section 301. In doing so, the Court declared that the policies relating to ordinary commercial arbitration were inapplicable to labor arbitration, and held that national labor policy mandated special treatment and deference to arbitration. *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 577-78, 581 (1960).

Accordingly, in Section 301 of the Act, Congress authorized federal courts to fashion a body of federal common law in actions relating to labor arbitration in order to promote a national labor policy. *Id.*; See also: *United Steelworkers of America v. Enterprise Wheel*, 363 U.S. 592, 596-99 (1960). The Court noted, in construing labor contracts, that "the labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed be foreign to the competence of courts." *Warrior and Gulf*, 263 U.S. at 581. Accordingly, courts have no choice but to uphold an arbitration award "so long as it draws its essence from the collective bargaining agreement." *Enterprise Wheel*, 363 U.S. at 597. The Supreme Court admonished that a court may not set aside an award because "[it] merely disagree[s] with the arbitrator's construction of the collective bargaining agreement." *Id.* at 598.

In *United Paperworkers Int'l. Union v. Misco Inc.*, 484 U.S. 29 (1987), the Supreme Court again confirmed that deferential treatment is to be given to arbitration awards in its decision. The Court went so far as to state "a court should not reject an award on the ground that the arbitrator misread the contract." *Id.* (emphasis added); See also: *Trustees of Boston University v. Boston University Chapter, American Assn. of Univ. Professors*, 746 F.2d 924 (1st Cir. 1984).

1. <u>The Joint Trade Board's Award is Enforceable and Governed by the Same Principles as is an Individual Arbitrator's Award.</u>

Article XIX of the collective bargaining agreement provides for a grievance and arbitration process for handling disputes that arise under the agreement. The agreement establishes a Joint Trade Board, comprised of representatives from both the District Council and the Contractors Association, to hear and adjudicate "all questions of interpretation of this agreement and all grievances and complaints." (Harriman Aff. ¶ 5; Exh. A).

The Joint Trade Board's award should be treated in the same manner as an award from an individual arbitrator. Section 301 authorizes federal courts to enforce final and binding decisions and awards by a joint union-employer grievance panel. See: *International Brotherhood of Electrical Workers, Local 910, AFL-CIO v. Roberts*, 992 F.Supp. 132, 134 (N.D.N.Y.1998). "These awards, like arbitration awards, are entitled to considerable deference from the courts." *Id.* at 135. "Courts have found, that as a general proposition, labor-management committee decisions are final and binding arbitration awards." *Team Electric M.V. Inc. v. Local Union No. 701 of the International Brotherhood of Electrical Workers*, 2001 U.S. Dist. LEXIS 17869 (N.D.Ill.) (October 19, 2001). An award is enforceable under Section 301 if it is "the parties' chosen instrument for the definitive settlement of grievances." *General Drivers, Local No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963).

Thus, the Joint Trade Board's decision should be analyzed, and ultimately enforced, in the same manner in which the Court would analyze a more traditional award from an individual arbitrator. In *Local Union 1253, Int'l Brotherhood of Elec. Workers v. S/L Construction, Inc.*, 217 F.Supp.2d 125 (D.Me. 2002), a local union and associated benefit funds sought to enforce the rulings of a joint labor-management committee that had found

an electrical contractor to have violated the agreement. The employer signed an "Inside Agreement," a collective bargaining agreement between an electrical contractors association and the local union that obligated signatory employers to pay certain wages, make contributions to fringe benefits funds, and obtain employees exclusively through the union's hiring hall. *Id.* at 128. The word "Arbitration" did not appear in the provisions. The agreement provided for three steps: an informal resolution between representatives of the parties; an "adjustment" by a Labor-Management Committee comprised of three union representatives and three employer association representatives; and final and binding adjudication before the Council on Industrial Relations for the Electrical Contracting Industry. *Id.* The agreement authorized the Committee to hear "all grievances or questions in dispute" and provided for an appeal to the Council on Industrial Relations in the event the Committee deadlocked. *Id.*

The Court held that because the Committee's ruling was a final and binding award and that the parties had agreed to arbitrate the dispute upon which the Committee ruled, the Court was required to uphold the award because it drew its essence from the agreement. Although the agreement stated that the decision of the Council on Industrial Relations was binding on the parties, the agreement was silent as to whether the *Committee's* decision, if not appealed, was final and binding. *Id.* at 132. The Court nonetheless enforced the Committee's decision, noting that other courts had concluded that similar or identical provisions that authorized joint labor-management committees to issue arbitration awards were entitled to judicial enforcement. *Id.*

Here, Article XIX of the agreement sets up a Joint Trade Board comprised of six contractors and six members of the District Council. (Harriman Aff. ¶ 6; Exh. A). Article

XIX, Section 11 states that the decisions and findings of the Joint Trade Board are binding on the parties, and that such decisions are final unless appealed in conformity with Article XX of the agreement. (Harriman Aff. ¶ 7; Exh. A). KMA did not attempt to appeal the Joint Trade Board's decision, so the Board's award is final and binding and enforceable under Section 301. The award is the equivalent of an arbitration award issued by an individual arbitrator.

Furthermore, the decision of the Joint Trade Board, like that of an individual arbitrator, shall be enforced "'as long as the arbitrator is even arguably construing the contract and acting within the scope of his authority.'" *Local Union 1253*, 217 F.Supp.2d at 137, quoting *Providence Journal Co. v. Providence Newspaper Guild*, 271 F.3d 16, 20 (1st Cir. 2001). In the instant case, the District Council charged KMA with failing to pay fringe benefit contributions due, a clear violation of Article IX of the agreement. KMA admits in its Answer that it did not make the contributions. (Answer ¶ 9). Thus, the Joint Trade Board's October 3, 2003 award draws its essence from the agreement and should be enforced.

    C.    <u>KMA Drywall Failed to Vacate the Joint Trade Board's Award Within Thirty Days of its Issuance.</u>

Any claim by KMA Drywall that it is not bound by the award or to the agreement must be rejected. Not only did KMA never appeal the award, it never moved to vacate the award within the thirty-day statutory time period. (Harriman Aff. ¶ 21). KMA's failure to move to vacate the award therefore bars it from now asserting defenses that it could have asserted in a motion to vacate.

The timeliness of a Section 301 suit to vacate an arbitration award is determined by referring to the appropriate state statute of limitations. *Derwin v. General Dynamics*

11

*Corporation*, 719 F.2d 484 (1st Cir. 1983). Accord: *International Ass'n of Bridge, Structural & Ornamental Iron Workers, Shopman's Local 501 v. Burtman Iron Works, Inc.*, 928 F.Supp. 83, 85 (D.Mass. 1996). "When Congress fails to furnish an express statute of limitations in connection with enforcement of a federal right, a court's initial look must be to state law to isolate the most closely analogous rule of timeliness." *Posadas Puerto Rico Associates, Inc. v. Asociacion de Empleados de Casino de Puerto Rico*, 873 F.2d 479, 480 (1st Cir. 1989). The Massachusetts Arbitration Act requires that any action taken to vacate an arbitration award be filed within 30 days of delivery of the award. M.G.L. c. 153, §11. The only grounds for vacating an arbitration award under Section 11 of the Massachusetts Arbitration Act are if: (1) the award was procured by corruption, fraud or other undue means; (2) the arbitrator was partial or involved in misconduct which prejudiced the rights of either party; or (3) the arbitrator exceeded his or her power. *Id.* None of these grounds is present here. In *Derwin v. General Dynamics Corporation*, 719 F.2d 484, 489 (1st Cir. 1983), the First Circuit, in interpreting the Massachusetts Arbitration Act explained:

> A party who fails to initiate an action to vacate or modify an award within the thirty day time limit specified in Sections 11 and 12 is *barred* from asserting those claims as defenses to a later action to confirm [the arbitration award] . . . *This provision virtually eliminates any prospect of a successful challenge to an Award after the passage of the thirty-day period.* (Emphasis added).

The Defendant failed to take any action to vacate or modify the award within the thirty-day period, so it cannot now claim that it was not bound to the collective bargaining agreement, or that the Board exceeded its power in hearing the matter. Furthermore, the Defendant may not assert any other affirmative defenses that it could

have raised in a motion to vacate the award. See: *Ironworkers Local Union No. 501 v. Burtman Iron Works*, 928 F.Supp. 83, 86 (D.Mass. 1996).

    D.    <u>KMA Drywall Was Properly Notified of the Hearing Date and of the Joint Trade Board's Decision.</u>

KMA Drywall cannot claim that it did not receive proper notice of the Joint Trade Board hearing, or of the Joint Trade Board's decision. The evidence establishes that KMA received notice of both the hearing and the decision via certified mail.

On September 10, 2003, the Joint Trade Board sent a letter via certified mail to Lynn Gardiner of KMA indicating that the District Council was bringing charges against the company, and that a hearing on the matter would be held before the Joint Trade Board at 9:45 a.m. on Wednesday, September 24, 2003, at the offices of Painters and Allied Trades District Council No. 35, 25 Colgate Road, Roslindale, Massachusetts. (Harriman ¶ 9; Exh. C). The Board advised KMA that a representative of the company should attend the hearing to present evidence. A copy of the Joint Trade Board's procedures was also attached. (Harriman Aff. ¶ 9; Exh. C). Lynn Gardiner signed for receipt of the letter on September 11, 2003, and attended the September 24, 2003 hearing. (Harriman Aff. ¶¶ 9, 10; Exh. C).

Following the hearing, the Joint Trade Board notified KMA Drywall in a letter dated October 3, 2003, of its decision, and included a copy of the Board's appeal procedure. (Harriman Aff. ¶ 12; Exh. D). Lynn Gardiner signed for receipt of the October 3, 2003 letter on October 6, 2003. (Harriman Aff. ¶ 14; Exh. D).

As it is clear that the Joint Board properly notified KMA Drywall of the hearing date and of the Board's decision, and that the company did not move to vacate the award

13

within the thirty-day statutory period, KMA Drywall is bound by the Joint Trade Board's decision.

IV.     Conclusion

For all of the foregoing reasons, and on the record as a whole, the Plaintiff requests that the Court grant its motion for summary judgment in its entirety.

                                      Respectfully submitted
                                      For the Plaintiff

                                      By its attorney,

                                      Jonathan M. Conti
                                      BBO #657163
                                      Feinberg, Campbell & Zack, P.C.
                                      177 Milk Street
                                      Boston, MA  02109
                                      (617) 338-1976

Dated: June 2, 2004