FILED
CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2004 JUN 14  P 4: 22

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| PAINTERS AND ALLIED TRADES ) | |
| DISTRICT COUNCIL NO. 35 ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 03-12564RCL |
| ) | |
| KMA DRYWALL ) | |
| Defendant ) | |
| ) | |

OPPOSITION OF KMA DRYWALL TO PLAINTIFF'S SUMMARY JUDGMENT MOTION

The Plaintiff, Painters and Allied Trades District Council No. 35 (the union) has brought this action for the purpose of imposing fines, attorneys fees and costs on the Defendant, KMA Drywall (KMA). As the Plaintiff notes in its Memorandum in Support of its Motion for Summary Judgment, only if the Plaintiff prevails in a judicial enforcement action will attorneys fees and interest be deemed part of the award (Defendant's Memorandum p. 5 ¶ 1). KMA Drywall has admitted in its answer- as it admitted to the Joint Trade Board (the Board)- that it owes fringe benefits for June, July and August 2003 for two jobs it performed for Suffolk Construction. A representative of KMA attended a meeting before the Board on September 24, 2003, to explain why it had not paid the benefits for June and July.[1] At that meeting, which was never identified as a hearing or an arbitration (see Exhibit A), KMA's representative told the Board that Suffolk Construction had not paid KMA for work done on two public works projects

---

[1]The benefits for August 2003 did not come due until September 26, 2003 (see Affidavit of Lynn Gardiner, Exhibit A). The letter to KMA of September 10, 2003 asking a representative to appear before the Joint Trade Board did not reference the August benefits. Nevertheless, KMA admits in its Answer that it owes fringe benefits for August 2003.

for which it had hired the members of the Defendant's union and that as soon as it was paid by Suffolk Construction it would pay the fringe benefits (Exhibit A). KMA did pay all wages to all members of Defendant's union (Exhibit A). At the meeting of September 24, KMA's representative explained that Suffolk Construction's failure to pay KMA the money it was owed put KMA in severe financial straits (Exhibit A). KMA's representative offered to agree to a payment schedule to pay the $21,171.32 owed for fringe benefits for June, July and August 2004 but the Board refused to discuss a payment schedule.[2] Instead the Board sent KMA a letter dated October 3, 2004, which sought to impose penalties and costs on KMA in addition to the $21,171.32 it owed in fringe benefits.

On December 19, 2003, the union filed suit which it served on KMA on March 3, 2004. KMA's counsel immediately contacted counsel for the union and asked if a payment schedule could be set up for the payment of the $21,171.32. That offer was declined. KMA's Counsel explained that KMA might be forced into bankruptcy or to dissolve the corporation if this matter was pursued to judgment. On May 28, 2004, counsel for the union phoned counsel for KMA and advised that he would be filing a Summary Judgment Motion. Once again, KMA's counsel requested that the matter be settled between the parties and that the union agree to a payment schedule. KMA's counsel advised defense counsel that Suffolk Construction has still not paid for KMA for the work done on the two public works projects and that KMA has consulted a bankruptcy lawyer (to whom a retainer fee was paid, thereby further reducing KMA's limited resources). Defense counsel spoke to his client which again refused to consider entering into a payment schedule with KMA to pay the fringe benefits owed to the union and filed this summary

---

[2] For example, KMA reached agreement with the carpenters union to pay fringe benefits owed in installments.

judgment motion the next day.

KMA does not have the money to pay the full $21,171.32 it owes to the Board at the present time. A judgment in this matter at this time would compel KMA to consider seeking protection in bankruptcy so that it can close out existing contracts and pay off creditors in an orderly manner. Moreover, further litigation in this matter will result in the needless expenditure of company resources in defense, thereby reducing the chance of all creditors eventually receiving full payment.

It seems clear that the Plaintiff is less interested in getting the fringe benefits paid then in taxing costs and "punishing" KMA for its inability to pay fringe benefits in a timely manner. If KMA is forced to dissolve the corporation, it will cease earning money to pay this debt. If KMA is forced into bankruptcy, the Defendant will receive no money or substantially less than what is owed in fringe benefits. The judicial enforcement of the debt owed does not get the money paid, it merely increases the claim the plaintiff will make on the carcass of KMA.

WHEREFORE KMA requests that the Court deny the Plaintiff's Motion for Summary Judgment and instruct the parties to work out a payment schedule for the $21,171.32 owed in fringe benefits; or in the alternative order summary judgment in the amount of $21,171.32, without the imposition of a fine or fees or costs, without entering final judgment, so that the parties may workout a payment schedule.

                                      KMA Drywall
                                      By its Attorney,

*/s/ MaryLin A. Beck*
MaryLin A. Beck
P.O. Box 148
Dedham, MA 02027
(781) 326-1444
BBO #034920

Dated: June 10, 2004

I certify that a true copy of the above document was served on each other party or attorney of record by first class mail, postage prepaid/by hand, on 6\11     20 04
*/s/ MaryLin A. Beck*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAINTERS AND ALLIED TRADES )
DISTRICT COUNCIL NO. 35, )
   Plaintiff )
)
v. ) C.A. No. 03-12564RCL
)
KMA DRYWALL, )
   Defendant )

### AFFIDAVIT

I, Lynn M. Gardiner, upon oath depose and say that:

1. I am the president of KMA Drywall, Inc. which was created on April 2, 2001 and which was certified as a woman business enterprise ("WBE") by the City of Boston on June 5, 2001.

2. KMA Drywall, Inc. was the drywall subcontractor on two public works projects (in Cambridge, MA and Milton, MA) on which Suffolk Construction Company was the general contractor. Members of the Painters and Allied Trades were hired to work on these projects and the benefits at issue in this litigation were earned on these projects.

3. KMA Drywall, Inc. has received no payments on either of these projects since July 2003 due to disputes over change orders, extra work, monies owed, etc. on these projects. KMA claims it is owed $106,659.

4. KMA Drywall's work on these projects was substantially complete in November and September, 2003 respectively, and KMA has and continues to work diligently to resolve the outstanding issues with Suffolk Construction so that payment can be released; however, no payment has yet been forthcoming.

5. The lack of payment on these two projects has put a severe financial strain on KMA Drywall, Inc., placing it on the verge of bankruptcy. I have consulted a bankruptcy attorney about bankruptcy or possible dissolution of the company and paid him a $2,500 retainer.

6. Since July, 2003 KMA Drywall, Inc. has tried to make small payments to its various creditors (approximately 15 of them) as monies become available from other projects and to pay those which are most pressing first.

7.  On September 24, 2003 I went to the Painters District Council 35 at its request because of fringe benefits owed for June and July, 2003. There were at least three other contractors in the waiting room, having been called in for the same reason. Each contractor was to be seen separately. Neither I nor any of the other contractors brought counsel.

8.  It was my understanding that I was there to explain why I had not paid the benefits for June and July, 2003 and to discuss plans for payment.

9.  Prior to becoming involved in the construction field, I was a legal secretary for approximately 18 years. It was not clear from the letter I received nor did it occur to me that this was to be a hearing or an arbitration.

10. After waiting for approximately 45 minutes with other subcontractors, I was brought into a room with approximately 20 people. Each person introduced themselves and I was handed the attached document (Exhibit 1) which does not state that this meeting was a hearing or an arbitration.

11. A woman then read out who I was and what monies were owed for the months of June and July 2003. She also stated that although the notice did not include August 2003, those monies would become due on September 26, 2003 (Fringe benefits are paid on a monthly basis according to Article IX, Section 3. Contributions are considered delinquent if not received by the 26th day following the month the work was performed. Therefore August benefits were not delinquent on September 24 when I was required to attend this meeting). I was then asked to explain why I had not paid the monies owed. I explained that I had not been paid on the two jobs for which these benefits were owed since July 2003 and that what little money I was receiving went to make sure wages and the most pressing bills were paid. I explained that I fully intended to pay the benefits as soon as I was paid on these jobs.

12. The entire meeting took approximately 10 to 15 minutes and I was told that I would be "notified of their decision by mail."

13. KMA Drywall also owes payment of benefits to the Carpenter's union. That union, however, has worked with me through this difficult time and accepts small periodic payments of the monies owed as I can send them.

14. All wages have been paid by KMA Drywall on all projects.

15. On October 3, 2003 I received a letter notifying me that it was unanimously found that KMA Drywall owed $21,171.32 for the months of June, July and August 2003 and was also assessed 20% in damages and a $200 administrative fee for a total amount due of $25,605.58. This amount was to be paid in full within ten days. I contacted Painters

District Council 35 and asked if some sort of payment plan could be made. I was told that at least $21,171.32 would have to be paid within ten days and if I did not make that payment the Painters District Council 35 would move forward in whatever way necessary.

16. KMA Drywall has never disputed that it owes the benefits and will pay them once the issues with Suffolk Construction are resolved and payment received.

17. At no time has the Painter and Allied Trades been willing to talk to me or my attorney about a payment schedule in any amount that I could pay.

Signed under the pains and penalties of perjury this 11TH day of June, 2004.

Lynn M. Gardiner

# KMA
# DRYWALL

September 24, 2003

**CHARGES PREFERRED BY**: Trustees of Painters & Allied Trades DC #35 Benefit Funds

**CHARGES PREFERRED AGAINST**: KMA Drywall
64 Etna Street
Dedham, MA 02027

## VIOLATION OF AGREEMENT:

Failure of the company to honor the terms of the District Council #35 Collective Bargaining Agreement.

## Specific Violation:

### Section 3 – Failure to Pay

Contributions shall be considered delinquent in not received by the 26th day of the month following the month the work was performed or for weekly submittals, the Wednesday of the week following the week in which the work is performed.

## Referred to Joint Trade Board in accordance with:

### Section 3B

A referral of the delinquent Employer by the Trustees to the Joint Trade Board for determination or action.

## DESCRIPTION OF CHARGES:

KMA Drywall has failed to pay contributions for June and July 2003. (August due tomorrow) Remittance report for June totals $9129.12. No report for July or August has been received.